Oral argument, 15 minutes per side. Mr. DeBoyne for the appellate. Good morning. Good morning, judges. I'd like to reserve most of my time, 10 minutes. I only have a few comments. And the main point that I want to make is that the Angelo case that was relied upon by the district judge is not present at all. It's just not relevant at all, and I wanted to point that out. First of all, that's a constructive amendment case, whereas we have a prejudicial variance case, and it was decided on the basis that there was no constructive amendment. And the second very significant difference is that the defendant in that case had 18 months' notice from the prosecutor that they were going to use telephone as well as the internet as a means for committing that crime. In our case, we had no notice. The prosecutor had tried the case against the brother solely on the gun theory. He opened on the gun theory. He presented his entire case on the gun theory. There was nothing, anything about a broken bottle until after the jury was in deliberation and sent out the question to the judge. Am I wrong in my recollection that, I don't know if you tried the case, sir, not, but that the defense counsel moved for a directed verdict on the ground that the broken bottle was not a dangerous weapon? Do you recall? Well, I was the defense counsel. So do you recall whether you moved for directed or not? I don't think I do. Okay, just a question. I don't think so. Okay. I probably moved for a directed verdict because I'm always moved for directed verdicts, but not on that basis, I don't think. I was surprised at the end that that became an issue. And then the third significant way in which the defense counsel never claimed prejudice. So they just decided on constructive amendment. There was no claim of a prejudicial variance, where in our case, it's a prejudicial variance. That was the main points that I wanted to make. The certificate of appealability is limited to prejudice, is that right? That's what the district judge said, that he felt that there could be a difference of opinion as to whether or not there was prejudice. Right. So what exactly was the prejudice? What was the prejudice? Well... It's the issue before us, right? The overall prejudice was that as defense counsel, you know, I did not know until the jury comes out with a question that says, may we find him guilty of a broken bottle. And that's the first time anything came into the case at all about a broken bottle. But specifically... Well, there was evidence of the broken bottle. Not really. There was no... No evidence of a... How did the jury come up with it then? A jury... Well, the reason the bottle is broken is because his brother assaulted one of the victims. He broke the bottle over his head. So it wasn't broken until he knocked it over his head. Then it was broken. But there was never any evidence that a broken bottle was used as a robbery. I mean, by that I would assume, you know, I have in my hand a broken bottle and I'm pointing it at you and saying, give me my money or something like that. I think he just picked up the money off the floor. Right. I think he did a pretty good job of beating the gun charge, to be perfectly honest. He would have been in much worse shape if they had convicted him of aiding and abetting with the use of a gun, which there was evidence of. There was evidence that there was a gun and there was evidence that there was not a gun. And there was evidence that there was a broken beer bottle. It got broken after being hit over somebody's head. Yes, sir. Yes, sir. But I'm... But there was never, never any evidence that a broken bottle was used as a robbery. It wasn't pointed at anybody. Nobody was threatened of anything. And also, if that had been in the case, I'd have asked questions about that. I'd have established clearly that there was no threat with a broken bottle. I would have asked my client that question. He might have decided not to testify, which is what he says is prejudice, because he testified without knowing that. But I would say that I would have asked him, you know, was there any threats by a broken bottle? He certainly would have testified no. Plus, I would have asked all the other witnesses that. So, so I certainly was prejudiced in cross-examination and prejudiced in the, in the argument. Did you cite any Supreme Court case? Are you aware of one that says that the really sort of narrowing language of the indictment saying, you know, to wit a gun would limit the prosecution to that theory? Is there anything that you can help us with in that regard? I cited several cases with respect to to wit, and I'm trying to think if, if it was a Supreme Court case. I think the Cotillades, if I'm pronouncing that right, case is talking about to wit. But that's not a Supreme Court case involving a habeas matter under the, how do you pronounce it, ADEPA? It may not be. Strangely enough, in my motel last night, I sorted the relevant from the not relevant cases and left all my relevant cases in the hotel. So I'm doing this all by memory. I can't check anything up. But I did cite Supreme Court cases, but Berger and I thought, Cotillades is not a Supreme Court case. They're Supreme Court cases, but they're in the supervisory role of the federal courts. They came from decisions from the federal courts, as opposed to a collateral attack on a state court judgment. I see. All right. So I don't know how relevant they are to this particular matter. Well, relevant on the issue of when there's prejudicial variance. No, it's a different standard. They were reviewing on a direct appeal up, as opposed to a collateral attack under ADEPA? Well, I would think that would still be relevant precedent, Your Honor. And in addition, the treatment by the Michigan Court of Appeals is unreasonable, because it doesn't deal with this prejudicial issue at all, as I recall. Well, Counsel, you've used several minutes of your... Oh, yes. Go right ahead. This relates to the initial question that Judge Cole asked. Didn't the district court below say that at the close of the prosecution's case, defense counsel moved for a directed verdict, arguing in part that a bottle is not a dangerous weapon, and therefore, as a matter of law, no armed robbery with regard to Hardy took place. Is that right? Well, that's what Judge Cole asked me a little while ago, and I certainly would have made a directed verdict. You said no, but the district court seems to say yes, right? But that I argued that in a directed verdict? You know, I'm sorry, I'm not able to... Well, it says defense counsel. I'm not sure if it's you or another defense counsel, but... No, it's only me. Well, then, that's what he says. He cites transcript volume 2 at page 362. This is the court now. I'm not talking about... Would that make a difference if that's the case? I am quite sure, you know, best of my recollection, that I never argued a broken bottle. I might have said a bottle, but I never ordered... Bottle, okay. I might have said a bottle. I don't recall that either, but I might have. I'm sure I never said a broken bottle, because a broken bottle... I was shocked when the jury came out and said, can we find him guilty if his partner had in his hand a broken bottle? I see. Okay. I never defended on that basis at all, I'm sure. And I would have had that been an issue, but it was never an issue until the jury was out. But the jury can come up with stuff. I mean, we can't control what juries do, as long as they're basing it on evidence and instructions before them. It was the judge... Judge sort of facilitated that ahead of time by defining weapon too broadly at some point? Yeah, he did. He didn't limit it to the gun, which he should have. He gave a general instruction. You objected to that when he did that? Pardon? You objected to that when he did that? No, I objected to the aiding and abetting, but I don't think there's a specific objection to that. No, I don't think I did make a specific objection to that. I should have, but I don't think I did. Right, I understand. I appreciate your candor. I'm just trying to figure out exactly where things went wrong here, according to you. It went wrong when the jury sent out that question and the judge answered and said, yes, they could do that. Well, they should have said, no, you can't do that. Well, yes, because it was... Within the law, it's within the instruction to do that, isn't it? Pardon? It would have been within the instruction to do that, the prior given instruction that you didn't object to do that, wouldn't it? Well, it's my position it was limited to a gun. That's all the prosecutor ever argued. The prosecutor never argued a bottle at all, nor a broken bottle. Okay, thank you. Thank you, Ms. McGoyne. We'll give you about three minutes rebuttal. Would that be fine? That's fine, thank you. Okay. Good morning. Bruce Edwards, Michigan, Assistant Attorney General on behalf of the warden. Judge Rogers, you're correct. It's the magistrate's report and recommendation that talks about how defense counsel moved for a directed verdict, arguing in part that a bottle was not a dangerous weapon. So that is correct. Does it make a difference that it's a broken bottle versus a bottle? Any difference. If I'm holding a bottle, that could be a weapon. If I'm holding a broken bottle, that could be a dangerous weapon either way. And Judge Rogers, you're also correct that the certificate of appealability was limited to the question of prejudice. So if we're just looking at prejudice and the state court didn't reach prejudice, does that mean that on the prejudice issue we're not bound by epidefference? I don't think so because... Why not? It seems like it would. Well, the state court basically said, here's your argument, and we deny relief. I mean, that is the equivalent of ruling on the merits. Well, they denied relief because they said aiding and abetting is the equivalent of the crime, which we know, but it just didn't really deal with whether there was some prejudice there. And it strikes me that while we have to give epidefference to it, the idea that the argument is totally answered by equating aiding and abetting with the crime itself doesn't really answer the question of whether the gun is the same as the bottle. I mean, that was the nature of the argument, right? It didn't really answer that argument, but to the extent it did answer it, it didn't then go on to prejudice. If you look at the brief that defense counsel, and that was Sato that filed the defense brief in the Michigan Court of Appeals, they specifically argued it was wrong to give the aiding and abetting instruction all by itself. And so that's why the Court of Appeals specifically addressed that issue. I don't object to their addressing it. It makes sense for them to address it. It just didn't really address this gun versus bottle issue. Well, I guess... It didn't say anything about it, right? Well, even the district judge, he just says that it doesn't matter which one it is because it's not a fatal variance. If you look at the information, you know, excuse me, if you look at the crime, the crime of armed robbery requires possession of a dangerous weapon. The prosecutor went beyond what an element of the crime was and did put in the information, a gun, but that is under the, what I would call, inapplicable fatal variance jurisprudence, mere suplusage. It's something that's just not required to have been in there and can be ignored, so long as the element was proven. But then there's an obligation to be notified, I mean, there's a constitutional requirement that you have notice of what the particular crime is that you're being... Absolutely. I mean, you could say, to wit, shot George at 10 a.m. and then convicted him of shooting Bill at 5 p.m., you can't do that, can you? I mean... I would assume that probably wouldn't be allowed. And why not? It's because they don't have notice, and the notice is, if you had the notice, you might be able to make... You might tailor your defense gear to what it is you're accused of, and that's why I'm wondering why there wasn't prejudice here in terms of what you were accused of. Well, what would the defense have been if they had left out... Well, the defense might have been, I don't think there was a bottle there either. He managed to convince the jury that there wasn't a gun. Well, except that there was testimony at the preliminary examination about the bottle. The victim had cuts on his head and blood on his head, and the defendant testified at trial, yeah, my brother hit the guy in the head with a bottle. The defendant admitted it at his trial. Yeah, but he admitted it because he thought that would help his case instead of hurt his case. Well, you know, I can't help him there. Now, for example... Well, but you could if you gave him the notice that his admitting it would cause him to go to jail, as opposed to his admitting it would not say anything about whether he had a gun or not. See the trouble I'm having here? You say, well, he did it, and there's evidence that he did it, but his argument, as I understand it, is I was prejudiced because I went along with the fact that there was a bottle because I didn't think that was going to be attributed to me because it said, to wit, gun. Right, but the to wit gun under the inapplicable fatal variance jurisprudence is what's called mere surplusage because it's not required to show what the dangerous weapon is, and there is case law out there that, for example, there's a case... Well, in our other example, it was mere surplusage to say, to wit, Bob, at 10 a.m. And what was the other alternative, Bill, at 2 p.m.? Yeah. Well, you might have been in a different location at 10 a.m. as opposed to 2 p.m. Right, but you don't have to have surplusage to put that in, but once you put it in, I mean, he might say, oh, you know, I was on my way to kill Bill, and that's why I didn't kill Bob at 10, right? But he's not going to say that if he knows that's going to be...do you see what I'm saying? I'm not getting the answer. It doesn't really answer it to say that isn't what the evidence was. The point is he didn't get the chance to tailor his evidence. Right. That's the difficulty I'm having with this case. What can you do to... Well, I can say that there's no U.S. Supreme Court case on point for this kind of an idea. Counsel has cited at least 10 cases on direct appeal from federal district court convictions, as Judge Hood pointed out, and that's under the Fifth Amendment right to a grand jury indictment. That's not applicable to the states in any way. It's just notice. It's just notice under the... There are cases about notice, though, right? Yes, there are. It's Cole v. Arkansas and Inouye Oliver, and a very general standard is set forth. And when you have a very general standard under AEDPA cases, the Supreme Court has said state courts have a lot of leeway when you have a very general standard. I cited a Ninth Circuit case in my brief where they said the U.S. Supreme Court has written very sparingly on this Sixth Amendment right to notice concept. And so it's my position that the Michigan Court of Appeals' rejection of this claim was within that very general standard that has been set forth by the United States Supreme Court in its case law. Now, counsel talks about how she was ambushed, but whenever you have two defendants, a co-defendant, an accomplice, you are automatically on notice. The aiding and abetting is, you know, be in play. And for example, the opening statement by the prosecutor, he says at one point, it's not my requirement to prove beyond a reasonable doubt every single fact, only the elements. And that's exactly what happened here. And then later he says, at some point in this trial, you will discover the judge will instruct you on the theory of aiding and abetting. And he says, it's our theory. He and his brother were working together. He's not only responsible for his own conduct, he's also responsible for his brother. They're responsible for each other's conduct in that partnership. So this was the opening statement. So everybody knew going in, the prosecutor's position was that I only have to prove the elements and he's an aider and abetter to his brother. And he has to answer for what his brother did. So right then, at absolute minimum, there was notice that I only have to prove the elements and the fact that a gun is not an element. And he's on the hook for whatever his brother did. And it's common sense that a broken beer bottle would be a dangerous weapon, theoretically. And the jury so surmised. Now, why they didn't believe the testimony about a gun, we're all left to wonder. But what they did, the charge, the indictment, he knew he was charged with possessing a dangerous weapon and that they had stolen some money. And the case or the proofs came in and established that. Really, no question. Now, for example, this court has said in Mira V. Marshall, a case I cited in my brief, that if an indictment fairly but imperfectly informs an accused of the charge, then it's not even cognizable as a notice issue. Or this is a case I did not cite, I just recently found. It's Martin versus. The question is whether it's fair here. Yes, yes. Another case. And that we're not talking about federal cases that require, have requirements that are required by the Constitution. Correct. Matter of notice. And for, before us, it's a matter of prejudice, actually. Yes, and that would be traceable to the notice, sufficiency of the notice. Right. Now, another case, Martin, it's 970 F. 2nd, 1539. The defendant was charged with rape by forcible compulsion. And then the judge instructed the jury, he could be guilty of, if he committed rape by forcible compulsion, or if the victim was incapable of consent because she was physically helpless. And the Sixth Circuit said, no problem. These are merely two methods by which one crime, rape, could have been committed. That's my argument. You can commit the armed robbery with a handgun, or you can commit it with a broken bottle. That's merely two ways. Something like that breaks down. I mean, it's got to be a spectrum. Sure, you could say he forced her because she was non-compass menace, or he forced her because he lifted a hammer over her, all right? But those are two ways to rape someone. And if you say rape and the evidence comes up of one, you can convict them. That makes sense. But at the other extreme, you're talking about Bill at 10 and Bob at 5. It's too different. To know what it is you have to defend against. So you can cite cases way over here, but there's some hypotheticals way over here. And I'm just wondering how, this is kind of in the middle, I'm wondering how far. Well, this case, there's no change in victims, and there's no change in time at all. But there's a big change in method, though. Yes, but the method is. A change in method that's specifically referred to. The exact dangerous weapon there was a change in. But that's not an element of the crime. And how it was used. It wasn't used by the defendant. It was, he helped someone else to use it. Well, but that's all, every indictment where there's a co-defendant aiding and abetting is implicitly in there, because there's no difference. I mean, that's always part of the assumption when you have two different defendants. Well, I understand that, but it still makes it different from just two different methods. It's a more different method when you're using someone else. Well, I found another case where the defendant was charged with committing an armed robbery using a .357, and then the testimony came in that it was actually a shotgun, and the court of appeals said that was okay. In other words, he used a weapon. And the only thing he had to prove was a weapon had been used. It wasn't significant which weapon it was. I mean, you're never going to have, so long as the element itself is not changed. And here, the element for armed robbery is possession of a dangerous weapon. What the weapon is, is not an element of this crime. And the elements were proven to the jury. And there was no surprise that there was a broken bottle. And the prosecutor in his opening statement specifically said, I don't have to prove all the facts, only the elements. And the defendant is on the hook for everything his brother did. Given that background, I think it's not objectively unreasonable for the Michigan Court of Appeals to have denied relief. And I also think that the district court- district court didn't reach the prejudice issue. Well, I think that they implicitly rejected the suggestion that there was prejudice. Because you're on the hook for what your co-defendant does under the aiding and abetting theory. So, where is the prejudice? There isn't going to be any prejudice. I mean, that's really what they said. If, you know, we're allowed to read between the lines when they reject relief on something, they don't have to, you know, dot every I and cross every T as they're laying out their exact answer. And I'm not sure how specifically it was argued, that part of it either. Because there was a big argument that it was wrong to give the aiding and abetting statute at all. That was a big part of the direct appeal. I mean, for example, once again, the fatal variance jurisprudence, which doesn't apply, but even if it did, United States v. Miller, 471 U.S. at 136 says, a part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as a useless averment and may be ignored. So, the fact that the information said to wit a gun is not, didn't limit the prosecutor, didn't require an acquittal if they didn't prove or convince the jury there was a gun. We don't really know what this jury thought. I mean, we sort of assume, because they acquitted him on felony firearm, that they didn't think there was a gun. But there could have been a compromise verdict. It might have been only one of the jurors that didn't think there was a gun. And they just said, well, the rest of us think the broken bottle is good enough. Or he, or the person who didn't think there was a gun thought the broken bottle was enough. You know, we don't really know, of course. But the defendant hasn't shown that the rejection of this claim violated clearly established. There's no concrete rule other than just the general idea that you're supposed to give notice so he knows what to defend against. And he had that here. And I would ask the court. Do you have to have a deference to win here, or can you do it on a de novo basis? I think I could win under de nominis. I think I would win under the fatal variance jurisprudence, which doesn't apply because it's only based on the Fifth Amendment. You're not talking about the... Right, right. That's not the question. Yes, but I'm just saying that even, you know, the general rule under the Sixth Amendment is very general. The fatal variance document is a lot more precise. I think I would win even under a more precise rule, because when you say, to wit a gun, it's not one of the elements. And the prosecutor only has to prove the elements of the crime. Thank you. If there are no more questions, thank you very much. And I would ask you to affirm the district court's denial of habeas relief. Okay. Ms. Burgoyne, you've got three minutes to rebuttal. Okay, thank you. Is this your paper? Well, first of all, in the last comment, it said, to wit a gun. And I would underline strongly that they limited their proof. But also, he argued about the opening statement saying that they're responsible for each other. That very general comment did not subtract from the fact that the prosecutor, in his opening statement, said this was done with a gun, and we will prove this was done with a gun. So he never, ever argued a broken bottle or even asked any questions about a broken bottle throughout the whole case. And with respect to your question, Judge Hood, I agree with counsel that Cole v. Arkansas and N. Ray Oliver are habeas corpus cases from the United States Supreme Court. So they have considered this issue in that context. How would your proof have been different? You're pretty well positioned to answer this because you were the lawyer, right? How would your proof might have been? And this is a speculative question. If at the outset they had said, we have only to prove either he had a gun or we can prove that he ate it and bit it and he's guilty by virtue of this bottle, and you knew about it, then what would you have done? I think there would have been a lot of questions of the witnesses with respect to a broken bottle. I mean, if he had argued... A bottle can, I mean... No, with respect to a broken bottle, he only argued a gun. He never argued a... If I mentioned a bottle... My hypothetical is, what if he did argue it? Right, that's right. What would have been different? I would have established... Apparently the jury picked up on it without his arguing it, right? What would you have done in response? I would have established it more clearly. As it is, there's nothing in the record... Establish what more clearly? That there was no robbery with a broken bottle, that nobody was ever threatened by a broken bottle, that the victims, you know, nobody ever pointed a bottle at them, you know, that... You would show that he hadn't been hit over the head with a bottle? No, not that he hadn't been hit over the head with a bottle. The judge treated that assault as a separate charge and refused to instruct on aiding and abetting on that. They said a broken bottle, not can he be found guilty because one of the victims was hit over the head with a bottle, but can we find the defendant guilty because his partner had in his hand a broken bottle? So as I visualize that, he hits him over the head and afterwards the bottle broke, so he has in his hand a broken bottle. But he's just standing there with a broken bottle. I would have established that no one was ever threatened with that broken bottle. I mean, as Judge Hood pointed out, they just picked the money up off the floor. You never picked up... Backed out of the room by the guy holding the broken bottle. Well, I would think to have an assault with a broken bottle for either armed or unarmed robbery, you'd have to, if this is a broken bottle, I'd have to point it at you. Well, if you've hit one guy over the head with the bottle and it broke, I would be very reticent to try to get my money back with the guy holding the broken bottle. Well, Judge Rogers asked me what I would have done, and I would have gone into that. I would have cross-examined on that, so I think I was... That issue was never litigated. I mean, were you afraid of the bottle? Pretending you're a victim, were you afraid of the bottle? I mean, there's a lot of questions that... Well, as you point out, the jury apparently agreed with me there was no gun. They may well have agreed with me that there was no threats with a broken bottle. And another... That's what I would have done differently. Thank you. That answers my question. My client says he might not have testified... Your time has expired, so if you could wind up in the next 30 seconds or so, we'd appreciate it. Well, I really don't have anything to add. It's my position, obviously, that this was a fatal variance and that it should be reversed. Thank you for your attention. Okay. Thank you very much, Ms. Burgoyne and Mr. Edwards, for your arguments today. We appreciate them. The case will be submitted. You may call the next case.